**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**


BERNICE GILL                                                                           PLAINTIFF


v.                                                  3:08CV00014 JTR


MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                          DEFENDANT

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff, Bernice Gill, has appealed the final decision of the Commissioner of the Social

Security Administration denying her claim for Supplemental Security Income ("SSI"). Both parties

have submitted Appeal Briefs (docket entries #11 and #12), and the issues are now joined and ready

for disposition.

The Court's function on review is to determine whether the Commissioner's decision is

supported by substantial evidence on the record as a whole and whether it is based on legal error.

*Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial

evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1]

"substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

analysis:

> "[O]ur review is more than an examination of the record for the existence of
> substantial evidence in support of the Commissioner's decision; we also take into
> account whatever in the record fairly detracts from that decision." *Haley v.
> Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however,
> "merely because substantial evidence would have supported an opposite decision."
> *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

---

[1]*Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

Plaintiff alleged disability[2] based on multiple sclerosis, seizures, mitral valve prolapse, bad nerves, fainting spells, headaches, dizziness and forgetfulness.  (Tr. 426.)  After conducting an administrative hearing at which Plaintiff and a vocational expert  testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through May 22, 2007, the date of his decision.  (Tr. 973-74.)  On December 12, 2007, the Appeals Council declined to assume jurisdiction, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 927-29.)  Plaintiff then filed her Complaint initiating this appeal.  (Docket #2.)

Plaintiff was 51 years old at the time of the latest hearing[3] (Tr. 1217) and has a high school education.  (Tr. 47, 401, 432, 639, 731.)  The ALJ found she had past relevant work as a fast food worker, and maid or housekeeper.  (Tr. 972.)  The Appeals Council found that Plaintiff's past work as a maid and fast food worker did not satisfy the criteria for "past relevant work."  (Tr. 928.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  Step 1 involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(I) (2005).  If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience.  *Id.* at § 416.920(b).

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment.  *Id.*, § 416.920(a)(4)(ii).  If not, benefits are denied.  *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the

---

[2]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

[3]There have been three hearings in this case.  (Tr. 43-68, 636-58, 1214-34.)

severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 416.920(a)(4)(iii).[4] If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since her alleged onset date[5] (Tr. 967); (2) had "severe" impairments, degenerative joint disease of the lumbar spine, a history of blackouts, and borderline intellectual functioning (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (*id.*); (4) was not credible (Tr. 967-70); (5) retained the RFC for a limited range of light work (Tr. 972); (6) was capable of performing her past relevant work as a fast food worker or maid or housekeeper (*id.*); and (7) was capable of performing other work, which jobs existed in significant numbers in the national economy. *Id.* Thus, the ALJ concluded that Plaintiff was not disabled. *Id.* In reaching his conclusion, the ALJ utilized the testimony of a vocational expert. *Id.*

In her Appeal Brief, Plaintiff argues that the ALJ erred: (1) in not finding that she met Listing 12.05C; (2) in failing to assign proper weight to the opinions of her treating physicians that she was disabled; (3) in improperly assessing her RFC and in not complying with the Court's January 30, 2006 Memorandum and Order (Tr. 989-98); (4) in determining that she could return to her past relevant work; (5) in failing to identify sufficient inconsistencies to legitimately discredit

---

[4]If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

[5]He thought there was some question about whether she had engaged in substantial gainful activity in 2004-06, but resolved the issue in her favor in order not to delay the determination of disability. (Tr. 967.)

her testimony.  The Court will discuss two of these arguments.

First, Plaintiff contends that the ALJ erred in not finding that she met Listing 12.05C. (*Pltff.'s App. Br.* at 23-25.)  In pertinent part, this Listing provides the following:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2006).

The requirements of the introductory paragraph of an adult mental disorder Listing are mandatory.  *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).  To meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.  *Id.*  As the Court has already found, Plaintiff did not meet this Listing.  *Gill v. Barnhart*, 3:04CV00272 JTR (Judgment for Plaintiff, Jan. 30, 2006) (Tr. 994.)  In addition, as the Appeals Council made clear:

> . . . the record is replete with observations by examiners that the claimant's effort in intelligence testing has been so minimal as to invalidate the resulting test scores, and that her primary motivation has been to secure disability benefits.

(Tr. 927.)

Plaintiff had the burden of showing that she met a Listing.  *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004); *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).  She did not meet that burden.

Second, Plaintiff contends that the ALJ disregarded the Court's specific instructions in its January 30, 2006 Memorandum and Order.  In the Court's decision remanding this case, it clearly

-4-

expressed its frustration with the ALJ's repeated failures to develop an adequate medical record on

the crucially important issue of whether Plaintiff did or did not suffer from multiple sclerosis:

> The ALJ's decision to obtain and rely on the opinion of a *consulting psychiatrist* to support his finding that Plaintiff does not have multiple sclerosis in no way complies with the Appeals Council's Remand Order which strongly suggested that the ALJ have Plaintiff examined by a *neurological specialist* who could make a definitive diagnosis of whether Plaintiff has multiple sclerosis, based on the results of an MRI, and, if necessary, a test on Plaintiff's spinal fluid.
>
> Over seven years have elapsed since Plaintiff filed her November 12, 1998 Application for SSI, and there still has not yet been an adequate medical record created from which to determine if Plaintiff is disabled. This delay is especially troubling in light of the ALJ's failure to adequately develop the medical record even after being explicitly directed to do so by the Appeals Council in its March 4, 2002 Order of Remand. (Tr. 663-664.) On remand, the ALJ *shall immediately*:
>
>> (1) Have Plaintiff examined by a neurologist who has expertise in diagnosing and treating multiple sclerosis. This specialist shall perform *all tests* necessary to make a final diagnosis of whether Plaintiff has multiple sclerosis.
>>
>> (2) Have Plaintiff examined by a new psychologist who shall perform a psychological evaluation, including a full battery of tests to determine Plaintiff's IQ. If Plaintiff's IQ is below 70 or indicates that she has borderline intellectual functioning, the ALJ must include an appropriate mental limitation in his hypothetical question to the vocational expert.
>
> After obtaining this medical information and allowing Plaintiff to supplement the record, the ALJ shall schedule an evidentiary hearing *as soon as possible* and then *expedite* the issuance of a decision in order to minimize, to the extent practical, any further delay in this matter.

(Tr. 997-98.) (emphasis in original).

At the time the Court remanded the case, two administrative hearings had already taken

place, and seven years had elapsed since Plaintiff filed her November 12, 1998 Application for SSI.

In its Order the Court thought that it had made it clear that it was *finally time* for the Commissioner

to create an *adequate medical record* for making a valid determination of whether Plaintiff did or

did not have multiple sclerosis. The Court specified that the way to do that was for the ALJ to insure

that the consulting neurologist perform an MRI and, if necessary, an additional test of Plaintiff's

spinal fluid.

On October 16, 2006, Dr. Michael H. Deshazo, a neurologist, performed the Court-ordered

neurological examination of Plaintiff.  (Tr. 1160-62.)  *Based solely on his physical examination of Plaintiff*, Dr. Deshazo found that she was neurologically intact; gait and tandem gait were done well; coordination testing showed no ataxia;[6] motor exam showed good strength and tone bilaterally.  (Tr. 1161.)  Contrary to the Court's Order, the ALJ failed to direct Dr. Deshazo to perform an MRI on Plaintiff's brain, and, if necessary, follow-up testing of her spinal fluid.  Furthermore, at the time Dr. Deshazo examined Plaintiff, he *knew* that her treating physician had recently ordered and reviewed an MRI of her brain, which he found to contain evidence that she, in fact, did have multiple sclerosis.  Nevertheless, Dr. Deshazo did *not* obtain a copy of that MRI to see if he agreed with the diagnosis of Plaintiff's treating physician.  Instead, in his report, he expressed the *entirely speculative opinion* that: "I doubt the diagnosis of multiple sclerosis.  She may have had an abnormal MRI scan, but often non-specific white matter changes are seen in migraine patients."  (Tr. 1162.)

Because of the ALJ's glaring oversight, coupled with the consulting physician's neglect in failing to review the recent abnormal MRI of Plaintiff's brain, the question of whether Plaintiff has multiple sclerosis is no closer to being answered today than it was over three years ago.  The ALJ should have given Dr. Deshazo specific instructions that he was to perform all necessary testing (including an MRI and, if necessary, testing of Plaintiff's spinal fluid) in order to arrive at a *definitive diagnosis*.  Additionally, the ALJ should have given Dr. Deshazo a copy of the recent MRI test results.  After Dr. Deshazo provided his speculative and utterly equivocal diagnosis, the ALJ should have contacted him again and sought clarification.  Thus, the Court once again finds itself in the position of reviewing a medical record that is not sufficient to allow it to make a determination of whether Plaintiff does or does not have multiple sclerosis.

*Upon remand, the Commissioner must promptly comply with all aspects of the Court's Order of January 30, 2006, and this Order*.  The length of the delay and the degree of neglect in this case

---

[6]An inability to coordinate muscle activity during voluntary movement.  PDR MEDICAL DICTIONARY 161 (2d ed. 2000).

has reached shameful proportion.  As the Eighth Circuit noted in *Snead v. Barnhart*, 360 F.3d 834, 836 n.1 (8th Cir. 2004), *quoting Cadillac v. Barnhart*, 84 Fed. Appx. 163 (3d Cir. 2003) (unpublished): "It should go without saying, but apparently bears repeating, that claimants seeking Social Security disability benefits deserve better." While this should also "go without saying," *the Commissioner must expedite the handling of Plaintiff's case on remand.*

IT IS THEREFORE ORDERED that the Commissioner's decision is REVERSED AND REMANDED for action consistent with this opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and  *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 27th  day of March, 2009.

_____

UNITED STATES MAGISTRATE JUDGE